## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
## INDIANAPOLIS DIVISION

| | |
|---|---|
| **TIFFANY D. COX**, | Case No. |
| Plaintiff, | Judge |
| v. | <u>**COMPLAINT FOR DAMAGES**</u> |
| **SERVIS ONE, INC., d/b/a BSI FINANCIAL**, c/o InCorp Services, Inc. 200 Byrd Way, Ste. 205 Greenwood, IN 46143 | <u>**JURY DEMAND ENDORSED HEREON**</u> |
| and | |
| **FAY SERVICING, LLC**, c/o Registered Agent Solutions, Inc. 200 Byrd Way, Ste. 205 Greenwood, IN 46143 | |
| Defendants. | |

Plaintiff Tiffany D. Cox, through counsel, for her Complaint for Damages against Defendants BSI Financial, Inc. and Fay Servicing, LLC, states as follows:

### <u>PARTIES, JURISDICTION, AND VENUE</u>

1.      Plaintiff Tiffany D. Cox ("Plaintiff" or "Cox") is the owner of residential real property, located at and commonly known as 6413 N. Main St, Willow Branch, IN 46186-9638 (the "Home").

2.      Defendant Servis One, Inc. d/b/a BSI Financial ("BSI") is a foreign corporation incorporated under the laws of the State of Delaware that maintains its headquarters and principal place of business at 1425 Greenway Dr., Ste. 400, Irving, TX 75038.

3.      Defendant Fay Servicing, LLC ("Fay") is a foreign limited liability company

organized under the laws of the State of Delaware that maintains its headquarters and principal place of business at 8001 Woodland Center Blvd., Ste. 100, Tampa, FL 33614.

4.      This Court has jurisdiction pursuant to 28 U.S.C. § 1331 as this action arises under the Dodd-Frank Wall Street Reform and Consumer Protection Act (DFA) and Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601, et seq. ("RESPA").

5.      This Court has supplemental jurisdiction to hear any state law claims that are plead herein or that may subsequently arise pursuant to 28 U.S.C. § 1367.

6.      Venue lies in this District pursuant to 28 U.S.C. § 1391(b) as a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this District.

## SUMMARY OF CLAIMS

7.      This action is filed to enforce regulations promulgated by the Consumer Financial Protection Bureau (CFPB) and implemented pursuant to 12 U.S.C. § 2605(f) that became effective on January 10, 2014, specifically, 12 C.F.R. § 1024.1, et seq. ("Regulation X").

8.      In January 2013, the CFPB issued a number of final rules concerning mortgage markets in the United States, pursuant to the DFA, Public Law No. 111-203, 124 Stat. 1376 (2010).

9.      Specifically, on January 17, 2013, the CFPB issued the Real Estate Settlement Procedures Act Mortgage Servicing Final Rules, 78 F.R. 10695 (Regulation X) (February 14, 2013), which became effective on January 10, 2014.

10.     Mortgage servicers are prohibited from failing "to take timely action to respond to a borrower's requests to correct errors relating to allocation of payments, final balances for purposes of paying off the loan, or avoiding foreclosure, or other standard servicer's duties." 12 U.S.C. § 2605(k)(1)(C).

11.     Mortgage servicers are prohibited from failing "to comply with any other obligation

found by the [CFPB], by regulation, to be appropriate to carry out the consumer protection purposes of [RESPA]." 12 U.S.C. § 2605(k)(1)(E).

12.     BSI is a mortgage servicer as defined by RESPA and Regulation X. 12 U.S.C. § 2605(i)(2); 12 C.F.R. § 1024.2(b).

13.     Fay is a mortgage servicer as defined by RESPA and Regulation X. 12 U.S.C. § 2605(i)(2); 12 C.F.R. § 1024.2(b).

14.     The Loan is a "federally related mortgage loan" as defined by RESPA and Regulation X. 12 U.S.C. § 2602(1); 12 C.F.R. § 1024.2(b).

15.     The Loan is not a "reverse mortgage transaction" as defined by RESPA and Regulation X. 12 C.F.R. § 1024.31; *see* 12 C.F.R. § 1026.33(a) (Regulation Z).

16.     The Loan is secured by the Home which is Cox's principal residence. 12 U.S.C. § 1024.30(c)(2).

17.     BSI is subject to the requirements of RESPA and Regulation X, and does not qualify for the exception for "small servicers"—as defined by 12 C.F.R. § 1026.41(e)(4)—nor for the exemption for a "qualified lender"—as defined by 12 C.F.R. § 617.7000.

18.     Fay is subject to the requirements of RESPA and Regulation X, and does not qualify for the exception for "small servicers"—as defined by 12 C.F.R.

19.     Cox asserts claims for relief against Defendants for violations of the specific rules under Regulation X, as set forth, *infra*.

20.     Cox has a private right action under RESPA pursuant to 12 U.S.C. § 2605(f) for the claimed violations and such action provides for remedies including actual damages, statutory damages, and attorneys' fees and costs.

## FACTUAL BACKGROUND

21.    On February 18, 2005, Ronald Allen ("Allen"), with whom Cox was previously in a relationship, executed a note (the "Note") and a mortgage on the Home that secured said Note (the "Mortgage") (collectively, the "Loan").

22.    On February 22, 2005, Allen executed a quitclaim deed, transferring his property interest in the Home to himself and Cox as joint tenants with right of survivorship.

23.    On August 16, 2006, Allen and Cox executed a quitclaim deed, transferring their property interest in the Home to Cox solely.

24.    On June 15, 2016, Cox filed for Chapter 13 bankruptcy protection in the United States Bankruptcy Court for the Southern District of Indiana, Case No. 16-04610-JJG-13 (the "Bankruptcy Case").

25.    On October 12, 2016, prior mortgage servicer Seterus, Inc. ("Seterus") filed Proof of Claim No. 8-1 in the Bankruptcy Case, wherein Seterus attached copies of the 2005 and 2006 quitclaim deeds. A copy of the Proof of Claim is attached as **Exhibit 1**.

26.    For all times relevant to this Complaint, Cox has maintained property insurance on the Home through USAA that was to be paid by her mortgage servicer from the funds she paid into her escrow account.

27.    BSI was aware that Cox had a policy with USAA, as BSI was involved with the processing of a check for repairs to the Home's roof and garage siding in 2020. Despite this knowledge, BSI decided to not pay USAA for the 2020-2021 policy.

28.    On or about December 24, 2020, BSI sent notice to Cox stating that her insurance policy had expired and BSI had purchased insurance for the Home through American National Property and Casualty Company ("Insurance Notice #1"). A copy of Insurance Notice #1 is

attached as **Exhibit 2**.

29.     As a result, Cox was required to pay $2,545.59 out of pocket to renew her policy with USAA.

30.     Cox attempted many times to contact BSI about its mistake, but BSI refused to speak with her.

31.     As a direct and proximate result of BSI failing to pay Cox's USAA premium, improperly purchasing substitute insurance, and refusing to speak with Cox about the issue, Cox engaged the services of legal counsel to request information from BSI pursuant to RESPA and Regulation X in an attempt to investigate potential errors related to the claimed balance owed and, if present, to have BSI correct such errors.

32.     On or about February 13, 2021, Cox, through counsel, sent the following pieces of correspondence, all classified as requests for information pursuant to 12 C.F.R. § 1024.36, to BSI at the address designated by BSI for receipt of requests for information and notices of error pursuant to 12 C.F.R. §§ 1024.36(b) and 1024.35(c) ("BSI's Designated Address"):

      a.     Correspondence captioned "Request for Information Pursuant to 12 C.F.R. § 1024.36" seeking additional information concerning the Loan, including a transaction history of the Loan, escrow analyses, and information related to loss mitigation, among other items ("RFI #1"); and

      b.     Correspondence captioned "Request for Information Pursuant to 12 C.F.R. § 1024.36 including a request for a payoff statement pursuant to 12 C.F.R. § 1026.36(c)(3)" seeking information concerning the Loan, specifically an itemized payoff statement and the name, address, and contact information for the current owner or assignee, master servicer, and current servicer of the Loan ("RFI #2").

Copies of RFI #1 and RFI #2 (the "RFIs") are attached as **Exhibit 3** and **Exhibit 4**, respectively.

33.     In the RFIs, Cox reminded BSI that she was the sole owner of the Home. Cox also enclosed copies of the 2005 and 2006 quitclaim deeds that were attached to the Proof of Claim.

*See* Exhibits 1, 3, and 4.

34.     On or about February 22, 2021, BSI sent correspondence in response to the RFIs improperly claiming that BSI had "no record of Ms. Cox being Successor in Interest of the loan or property (the "RFI Response"). A copy of the RFI Response attached as **Exhibit 5**.

35.     BSI failed to send any substantial response to the RFIs to Cox or her counsel until over six months later.

36.     As a direct and proximate result of BSI's failure to respond to the RFIs, on or about March 17, 2021, Cox, through counsel, sent a notice of error pursuant to 12 C.F.R. § 1024.35 ("NOE #1") to BSI at BSI's Designated Address. A copy of NOE #1, without supporting enclosures, is attached as **Exhibit 6**.

37.     Through NOE #1, Cox asserted that BSI already had in its possession sufficient documentation showing that Cox was the sole owner of the Home and that BSI failed to properly respond to the RFIs. *See* Exhibit 6.

38.     On or about March 24, 2021, BSI sent correspondence in response to NOE #1 now claiming that it required evidence that Allen was deceased and that Cox was the sole heir (the "NOE #1 Response"). A copy of the NOE #1 Response is attached as **Exhibit 7**.

39.     As a direct and proximate result of BSI's failure to respond to the RFIs and NOE #1, on or about July 27, 2021, Cox, through counsel, sent a second notice of error pursuant to 12 C.F.R. § 1024.35 ("NOE #2") to BSI at BSI's Designated Address. A copy of NOE #2, without supporting enclosures, is attached as **Exhibit 8**.

40.     In NOE #2, Cox reiterated that she is the sole owner of the Home and explained to BSI that Seterus filed the Proof of Claim in the Bankruptcy Case wherein it treated Cox as the borrower of the Loan. *See* Exhibit 8.

41.    On or about September 10, 2021, BSI sent correspondence in response to NOE #2 that provided some of the information requested by the RFIs (the "NOE #2 Response"). A copy of the NOE #2 Response is attached as **Exhibit 9**.

42.    On or about July 19, 2021, BSI sent a notice to Cox stating that it intended to purchase an insurance policy for the Home for 2021-2022 ("Insurance Notice #2"). A copy of Insurance Notice #2 is attached as **Exhibit 10**.

43.    On or about November 3, 2021, Cox, through counsel, sent a third notice of error pursuant to 12 C.F.R. § 1024.35 ("NOE #3") to BSI at BSI's Designated Address. A copy of NOE #3, without supporting enclosures, is attached as **Exhibit 11**.

44.    Through NOE #3, Cox asserted that BSI had twice failed to timely pay the premium for Cox's homeowners insurance policy through USAA. *See* Exhibit 11.

45.    Further, NOE #3 asserts that BSI refused to speak with Cox regarding the Loan and otherwise refused to recognize her status as to the Loan. *See* Exhibit 11.

46.    On or about November 17, 2021, BSI sent correspondence in response to NOE #3 that purportedly corrected the insurance premium issue but ignored that BSI was refusing to speak with Cox (the "NOE #3 Response"). A copy of the NOE #3 Response is attached as **Exhibit 12**.

47.    Sometime in November or December, 2021, BSI transferred the servicing of the Loan to Fay.

48.    On or about December 17, 2021, Cox, through counsel, sent a notice of error pursuant to 12 C.F.R. § 1024.35 ("NOE #4") to Fay at address designated by Fay for receipt of requests for information and notices of error pursuant to 12 C.F.R. §§ 1024.36(b) and 1024.35(c) ("Fay's Designated Address"). A copy of NOE #4, without supporting enclosures, is attached as **Exhibit 13**.

49.     Through NOE #4, Cox asserted that BSI had refused pay the 2021-2022 USAA premium as promised through the NOE #3 Response. *See* <u>Exhibit 13</u>.

50.     NOE #4 also informs Fay of the issues Cox encountered with BSI to allow Fay to avoid continuing in the footsteps of BSI. *See* <u>Exhibit 13</u>.

51.     Fay received NOE #4 at Fay's Designated Address on December 20, 2021. *See* <u>Exhibit 13</u>.

52.     Fay was required to acknowledge NOE #4 by December 28, 2021 and provide a substantive response by February 3, 2022.

53.     Fay did not send any correspondence acknowledging receipt of or responding to NOE #4 until February 8, 2022[1], when Fay sent correspondence to Cox stating that it required more time to respond to NOE #4. A copy of the February 8, 2022 correspondence is attached as **<u>Exhibit 14</u>**.

54.     Even if Fay has timely requested an additional fifteen (15) business days to respond to NOE #4 before the response time had lapsed (*see* 12 C.F.R. § 1024.35(e)(3)(ii)), Fay failed to provide a substantive response to NOE #4 by February 25, 2022.

55.     As a direct and proximate result of Fay's failure to respond to NOE #4, on or about May 25, 2022, Cox, through counsel, sent a second notice of error pursuant to 12 C.F.R. § 1024.35 ("NOE #5") to Fay at Fay's Designated Address. A copy of NOE #5, without supporting enclosures, is attached as **<u>Exhibit 15</u>**.

56.     Fay received NOE #5 at Fay's Designated Address on June 1, 2022. *See* <u>Exhibit 15</u>.

---

[1]   The correspondence is dated February 1, 2022, however, the postage clearly indicates that this correspondence was mailed on February 8, 2022. *See* <u>Exhibit 14</u>.

57.    As of July 6, 2022, Fay has failed to send Cox any correspondence acknowledging receipt of NOE #5.

## IMPACT AND DAMAGES

58.    Defendants' actions, in failing to properly respond to Cox's requests for information and subsequently refusing to reasonably investigate and/or correct their erroneous conduct, have caused Cox to incur attorneys' fees and costs in attempts to obtain such information and correct such errors.

59.    BSI's improper actions caused Cox to suffer from actual and proximate damages including, but not limited to:

a.    Legal fees, costs, and expenses to submit the RFIs and NOE #1 and NOE #2 to BSI in a good faith attempt to obtain information to ascertain the nature of the problems at hand and to amicably resolve the matter, or to have BSI mitigate the harm caused to Cox;

b.    Legal fees, costs, and expenses to submit the NOE #3 to BSI in a good faith attempt to have BSI mitigate the harm caused to Cox when BSI failed to pay her USAA premiums;

c.    Improper fees and charges imposed on the Loan and the attempted collection of such fees, for which Cox is personally obligated or which otherwise negatively impacts any equity in the Home to which she is entitled; and,

d.    Severe emotional distress driven by BSI's failure to timely pay her USAA premiums and failure to properly recognize Cox's property interest in the Home which has resulted in frustration, loss of sleep, anxiety, depression, and other significant emotional distress.

60.     Fay's improper actions caused Cox to suffer from actual and proximate damages including, but not limited to:

   a.   Legal fees, costs, and expenses to submit NOE #4 and NOE #5 to Fay in a good faith attempt to have Fay mitigate the harm caused to Cox when BSI failed to timely pay her USAA premiums;

   b.   Improper fees and charges imposed on the Loan and the attempted collection of such fees, for which Cox is personally obligated or which otherwise negatively impacts any equity in the Home to which she is entitled; and,

   c.   Severe emotional distress driven by Fay continuing BSI's improper conduct which has resulted in frustration, loss of sleep, anxiety, depression, and other significant emotional distress.

61.     Moreover, Cox has recently been attempting to refinance the Loan with a new lender, but has been unable to effectuate the same due to Fay demanding to discuss the Loan with Allen rather than Cox.

62.     Fay's refusal to speak with Cox and her preferred new lender rather than Allen has delayed the refinance process significantly—and potentially indefinitely—with Cox being prevented from obtaining the benefits of the intended refinance transaction and with the effects of such delays being exacerbated by the recent and continuing rise in interest rates as the longer the delay persists, the higher the interest rate on the new loan will almost certainly be.

**PATTERN AND PRACTICE OF BSI'S
VIOLATIONS OF RESPA AND REGULATION X**

63.     BSI's actions are part of a pattern and practice of behavior in violation of Cox's rights and in abdication and contravention of BSI's obligations under the mortgage servicing regulations set forth in Regulation X of RESPA.

64.     BSI has numerous consumer complaints lodged against it nationally on the CFPB's consumer complaint database. Each such complaint is filed and cataloged in the CFPB's publicly accessible online database which can be accessed at the following link: http://www.consumerfinance.gov/data-research/consumer-complaints/.

65.     Cox has reviewed the CFPB's consumer complaint database and has identified narratives asserting that BSI engaged in similar conduct against other borrowers. In particular, Cox has reviewed the fifteen (15) consumer complaints attached hereto and identified as **Group Exhibit 16**. The date, details, and a narrative disclosed by the consumer is set forth in each complaint. The complaints show conduct which demonstrates that BSI has engaged in a pattern or practice of violating RESPA with respect to other borrowers.

### PATTERN AND PRACTICE OF FAY'S
### VIOLATIONS OF RESPA AND REGULATION X

66.     Fay's actions are part of a pattern and practice of behavior in violation of Cox's rights and in abdication and contravention of Fay's obligations under the mortgage servicing regulations set forth in Regulation X of RESPA.

67.     Fay has numerous consumer complaints lodged against it nationally on the CFPB's consumer complaint database. Each such complaint is filed and cataloged in the CFPB's publicly accessible online database which can be accessed at the following link: http://www.consumerfinance.gov/data-research/consumer-complaints/.

68.     Cox has reviewed the CFPB's consumer complaint database and has identified narratives asserting that Fay engaged in similar conduct against other borrowers. In particular, Cox has reviewed the fifteen (15) consumer complaints attached hereto and identified as **Group Exhibit 17**. The date, details, and a narrative disclosed by the consumer is set forth in each complaint. The complaints show conduct which demonstrates that Fay has engaged in a pattern or

practice of violating RESPA with respect to other borrowers.

**COUNT ONE: AGAINST BSI**
**VIOLATIONS OF 12 C.F.R. §§ 1024.34 AND 12 U.S.C. § 2605**

**(Failure to make payments from an escrow account in a timely manner)**

69.     Cox restates and incorporates all of the allegations contained in paragraphs 1 through 68 in their entirety, as if fully rewritten herein.

70.     12 U.S.C. § 2605(g) provides:

> If the terms of any federally related mortgage loan require the borrower to make payments to the servicer of the loan for deposit into an escrow account for the purpose of assuring payment of taxes, insurance premiums, and other charges with respect to the property, the servicer shall make payments from the escrow account for such taxes, insurance premiums, and other charges in a timely manner as such payments become due.

*See also* 12 C.F.R. § 1024.34(a); 12 C.F.R. § 1024.17(k)(1).

71.     12 U.S.C. § 2605(k)(1)(E) provides that "[a] servicer of a federally related mortgage shall not ... fail to comply with any other obligation found by the Bureau of Consumer Financial Protection, by regulation, to be appropriate to carry out the consumer protection purposes of this chapter."

72.     The Loan included an escrow account and Cox was current on her mortgage payments as of September 6, 2020 and September 6, 2021.

73.     BSI twice failed to pay the USAA insurance policy and Cox was forced to pay USAA directly.

74.     Due to this error, BSI purchased force-placed insurance and created errors with the accounting of the Loan that Cox is still trying to correct nearly two years later.

75.      BSI assessed improper fees and charges to the Loan as a result of failing to pay for

the USAA insurance policy, resulting in errors in the accounting of the Loan.

76.      BSI's failure to timely pay the USAA insurance policy constitutes distinct violations of 12 U.S.C. §§ 2605(g) and 2605(k)(1)(E) and 12 C.F.R. § 1024.34(a).

77.      BSI's actions caused Cox to suffer actual damages, including, but not limited to, improper fees and charges being assessed to the Loan, attorneys' fees incurred for the time in preparing the RFIs and NOE #3 and NOE #4, postage costs for mailing the RFIs and NOE #3 and NOE #4, and extreme emotional distress. *See* ¶ 59.

78.      BSI's actions are part of a pattern and practice of behavior in conscious disregard for Cox's rights and in abdication of BSI's obligations under RESPA and Regulation X.

79.      As a result of BSI's actions, BSI is liable to Cox for statutory damages and actual damages as further described, *supra*. 12 U.S.C. § 2605(f)(1).

80.      Additionally, Cox requests reasonable attorneys' fees and costs incurred in filing and maintaining this action. 12 U.S.C. § 2605(f)(3).

## <u>COUNT TWO: AGAINST BSI</u>
### VIOLATIONS OF 12 C.F.R. § 1024.37 AND 12 U.S.C. § 2605

**(Unreasonable purchase of force placed insurance and failure to refund)**

81.      Cox restates and incorporates all of the allegations contained in paragraphs 1 through 68 in their entirety, as if fully rewritten herein.

82.      12 U.S.C. § 2605(k)(2) defines "force-placed insurance" as hazard insurance coverage obtained by a servicer of a federally related mortgage when the borrower has failed to maintain or renew hazard insurance on such property as required of the borrower under the terms of the mortgage." *See also* 12 C.F.R. § 1024.37(a)(1).

83.      "All charges ... related to force-placed insurance imposed on the borrower by or through the servicer shall be bona fide and reasonable." 12 U.S.C. § 2605(m); *see also* 12 C.F.R.

§ 1024.37(b).

84.     Comment 2 of the CFPB's Official Interpretations of 12 C.F.R. § 1024.35(b)(5), entitled "Unreasonable basis", declares that "a servicer lacks a reasonable basis to impose fees that are not bona fide, such as ... (iv.) A charge for force-placed insurance in a circumstance not permitted by § 1024.37."

85.     12 U.S.C. § 2605(l)(3)(B) requires a servicer to "refund to the consumer all force-placed insurance premiums paid by the borrower during any period during which the borrower's insurance coverage and the force-placed insurance coverage were each in effect, and any related fees charged to the consumer's account with respect to the force-placed insurance during such period."

86.     12 U.S.C. § 2605(k)(1)(A) provides that "[a] servicer of a federally related mortgage shall not ... obtain force-placed hazard insurance unless there is a reasonable basis to believe the borrower has failed to comply with the loan contract's requirements to maintain property insurance."

87.     12 U.S.C. § 2605(k)(1)(E) provides that "[a] servicer of a federally related mortgage shall not ... fail to comply with any other obligation found by the Bureau of Consumer Financial Protection, by regulation, to be appropriate to carry out the consumer protection purposes of this chapter."

88.     BSI lacked a bona fide and reasonable basis to believe that Cox failed to comply with the Loan's requirement to maintain property insurance because BSI was the party responsible for paying the premiums for the USAA insurance policy.

89.     BSI lacked a bona fide and reasonable basis to disburse payments for force-placed insurance because BSI failed to pay the premiums for the USAA insurance policy.

90.     BSI assessed improper fees and charges to the Loan as a result of improperly paying for force-placed insurance, resulting in errors in the accounting of the Loan.

91.     BSI's actions in purchasing force-placed insurance without a bona fide and reasonable basis and failing to refund Cox for the improper fees and charges related to the force-placed insurance constitute distinct violations of numerous subsections of 12 U.S.C. § 2605 and 12 C.F.R. § 1024.37(b).

92.     BSI's actions caused Cox to suffer actual damages, including, but not limited to, improper fees and charges being assessed to the Loan, attorneys' fees incurred for the time in preparing the RFIs and NOE #3 and NOE #4, postage costs for mailing the RFIs and NOE #3 and NOE #4, and extreme emotional distress. *See* ¶ 59.

93.     BSI's actions are part of a pattern and practice of behavior in conscious disregard for Cox's rights and in abdication of BSI's obligations under RESPA and Regulation X.

94.     As a result of BSI's actions, BSI is liable to Cox for statutory damages and actual damages as further described, *supra*. 12 U.S.C. § 2605(f)(1).

95.     Additionally, Cox requests reasonable attorneys' fees and costs incurred in filing and maintaining this action. 12 U.S.C. § 2605(f)(3).

## COUNT THREE: AGAINST BSI
## VIOLATIONS OF 12 C.F.R. § 1024.36 AND 12 U.S.C. § 2605

### (Failure to timely and properly respond to requests for information)

96.     Cox restates and incorporates all of the allegations contained in paragraphs 1 through 68 in their entirety, as if fully rewritten herein.

97.     RESPA was enacted, in part, to ensure "that consumers throughout the Nation are provided with greater and more timelier information on the nature and costs of the settlement process and are protected from unnecessarily high settlement charges caused by abusive practices

that have developed in some areas of the country." 12 U.S.C. § 2601(a).

98.     "A servicer shall comply with the requirements of this section for any written request for information from a borrower that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and states the information the borrower is requesting with respect to the borrower's mortgage loan." 12 C.F.R. § 1024.36(a); see also 12 U.S.C. § 2605(e)(1)(B).

99.     Comment 1 of the Official Interpretations of the CFPB to 12 C.F.R. § 1024.36(a) provides that "[a]n information request is submitted by a borrower if the information request is submitted by an agent of the borrower."

100.    A servicer must respond to a request for information by:

> (i)   Providing the borrower with the requested information and contact information, including a telephone number, for further assistance in writing; or
>
> (ii)  Conducting a reasonable search for the requested information and providing the borrower with a written notification that states that the servicer has determined that the requested information is not available to the servicer, provides the basis for the servicer's determination, and provides contact information, including a telephone number, for further assistance.

12 C.F.R. § 1024.36(d)(1); *see also* 12 U.S.C. § 2605(e)(2)(C).

101.    Furthermore, a servicer must properly respond to a request for information within the following deadlines:

> A servicer must comply with the requirements of paragraph (d)(1) of this section:
>
> (A)   Not later than 10 days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives an information request for the identity of, and address or other relevant contact information for, the owner or assignee of a mortgage loan; and
>
> (B)   For all other requests for information, not later than 30 days (excluding legal public holidays, Saturdays, and Sundays)

after the servicer receives the information request.

12 C.F.R. § 1024.36(d)(2)(i); *see also* 12 U.S.C. § 2605(e)(2).

102.    The RFIs each constitute a request for information as defined by 12 C.F.R. § 1024.36(a) (and constitute qualified written requests pursuant to 12 U.S.C. § 2605(e)(2)(B)) as they are each a written request from Cox that included her name, mortgage loan account number, and property address and requested information related to the Loan. *See* Exhibit 3 and Exhibit 4.

103.    On or about February 13, 2021, Cox, through counsel, submitted the RFIs to BSI at BSI's Designated Address. *See* Exhibit 3 and Exhibit 4.

104.    BSI received the RFIs at BSI's Designated Address on February 17, 2021. *See* Exhibit 3 and Exhibit 4.

105.    BSI failed to send any substantial response to the RFIs to Cox or her counsel until a letter dated September 10, 2021.

106.    BSI's actions constitute a violation of 12 C.F.R. § 1024.36(d) and 12 U.S.C. §§ 2605(e)(2)(C) and 2605(k)(1)(E) and has caused Cox to suffer actual damages, including, but not limited to incurring attorneys' fees and costs associated with the preparing and sending of NOE #1 (*see* Exhibit 6) and NOE #2 (*see* Exhibit 8), which would not have been necessary but for BSI's failure to timely and properly respond to the RFIs.

107.    Further, BSI's failure to comply with 12 C.F.R. § 1024.36(d) and 12 U.S.C. §§ 2605(e)(2)(C) and 2605(k)(1)(E) caused Cox's attorneys' fees and costs associated with the preparation of the RFIs to metamorphose into damages. *Marais v. Chase Home Fin., LLC* (Marais II), 24 F. Supp. 3d 712, 726-728 (S.D. Ohio 2014); *see Marais v. Chase Home Fin. LLC* (Marais I), 736 F.3d 711, 721 (6th Cir. 2013).

108.    BSI's actions are part of a pattern and practice of behavior in conscious disregard

for Cox's rights and in abdication of BSI's obligations under RESPA and Regulation X.

109.    As a result of BSI's actions, BSI is liable to Cox for statutory damages and actual damages as further described, *supra*. 12 U.S.C. § 2605(f)(1).

110.    Additionally, Cox requests reasonable attorneys' fees and costs incurred in filing and maintaining this action. 12 U.S.C. § 2605(f)(3).

### COUNT FOUR: AGAINST BSI
### VIOLATIONS OF 12 C.F.R. § 1024.35 AND 12 U.S.C. § 2605

**(Failure to perform reasonable investigations into the errors asserted by notices of error)**

111.    Cox restates and incorporates all of the allegations contained in paragraphs 1 through 68 in their entirety, as if fully rewritten herein.

112.    "A servicer shall comply with the requirements of this section for any written notice from the borrower that asserts an error and that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and the error the borrower believes has occurred." 12 C.F.R. § 1024.35(a); see also 12 U.S.C. § 2605(e)(1)(B).

113.    Comment 1 of the CFPB's Official Interpretations of 12 C.F.R. § 1024.35(a) provides that "[a] notice of error is submitted by a borrower if the notice of error is submitted by an agent of the borrower." Supplement I to Part 1024.

114.    A servicer must respond to a notice of error by either:

    (A)  Correcting the error or errors identified by the borrower and providing the borrower with a written notification of the correction, the effective date of the correction, and contact information, including a telephone number, for further assistance; or

    (B)  Conducting a reasonable investigation and providing the borrower with a written notification that includes a statement that the servicer has determined that no error occurred, a statement of the reason or reasons for this determination, a statement of the borrower's right to request documents relied upon by the servicer in reaching its determination, information

regarding how the borrower can request such documents, and contact information, including a telephone number, for further assistance.

12 C.F.R. § 1024.35(e)(1)(i); *see also* 12 U.S.C. § 2605(e)(2)(B).

115.    A servicer must respond to a notice of error in compliance with 12 C.F.R. § 1024.35(e)(1):

> (A)    Not later than seven days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives the notice of error for errors asserted under paragraph (b)(6) of this section.
> (B)    Prior to the date of a foreclosure sale or within 30 days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives the notice of error, whichever is earlier, for errors asserted under paragraphs (b)(9) and (10) of this section.
> (C)    For all other asserted errors, not later than 30 days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives the applicable notice of error.

12 C.F.R. § 1024.35(e)(3)(i); *see also* 12 U.S.C. § 2605(e)(2).

116.    "A servicer of a federally related mortgage shall not...fail to take timely action to respond to a borrower's requests to correct errors relating to allocation of payments, final balances for purposes of paying off the loan, or avoiding foreclosure, or other standard servicer's duties." 12 U.S.C. § 2605(k)(1)(C).

117.    A servicer of a federally related mortgage shall not "fail to comply with any other obligation found by the Bureau of Consumer Financial Protection, by regulation, to be appropriate to carry out the consumer protection purposes of this chapter." 12 U.S.C. § 2605(k)(1)(E).

118.    NOE #1, NOE #2, and NOE #3 each constitute a notice of error as defined by 12 C.F.R. § 1024.35(a) (and constitute qualified written requests pursuant to 12 U.S.C. § 2605(e)(2)(B)) as they are each a written notice from Cox that included her name, mortgage loan account number, and property address and asserts an error that she believed to have occurred. *See*

Exhibit 6, Exhibit 8, and Exhibit 11.

119.    On or about March 17, 2021, Cox, through counsel, submitted NOE #1 to BSI at BSI's Designated Address. *See* Exhibit 6.

120.    BSI received NOE #1 at BSI's Designated Address on March 20, 2021. *See* Exhibit 6.

121.    Through NOE #1, Cox asserted that BSI already had in its possession sufficient documentation showing that Cox was the sole owner of the Home and that BSI failed to properly respond to the RFIs. *See* Exhibit 6.

122.    On or about March 24, 2021, BSI sent the NOE #1 Response claiming that it required evidence that Allen was deceased and that Cox was the sole heir. *See* Exhibit 7.

123.    BSI failed to fulfill its obligations as to 12 C.F.R. § 1024.35(e)(1)(i)(A) as BSI did not admit that any errors occurred as alleged in NOE #1. *See* Exhibit 7.

124.    BSI did not fulfill its obligations as to 12 C.F.R. § 1024.35(e)(1)(i)(B), as it is clear that BSI did not perform a reasonable investigation into the errors alleged through NOE #1 because not only did Cox enclose with the RFIs and NOE #1 evidence showing that Cox is the sole owner of the Home, Seterus, the previous servicer of the Loan, already acknowledged, through its filing in the Bankruptcy Case, that Cox had an ownership interest in the Loan. *See* Exhibit 1, Exhibit 3, Exhibit 4, and Exhibit 6.

125.    BSI's failure to properly respond to NOE #1 by failing to correct its errors or to otherwise perform a reasonable investigation into and otherwise properly respond to the errors alleged through NOE #1 constitutes a violation of 12 C.F.R. § 1024.35(e) and 12 U.S.C. §§ 2605(e) and (k) and has caused Cox to suffer actual damages, including, but not limited to incurring attorneys' fees and costs associated with the preparing and sending of NOE #2 (*see* Exhibit 8) and

NOE #3 (*see* <u>Exhibit 11</u>), which would not have been necessary but for BSI's failure to properly respond to NOE #1.

126.     Further, BSI's failure to comply with 12 C.F.R. § 1024.35(e) and 12 U.S.C. §§ 2605(e) and (k) caused Cox's attorneys' fees and costs associated with the preparation of NOE #1 to metamorphose into damages. *See Marais I* and *Marais II*.

127.     On or about July 27, 2021, Cox, through counsel, submitted NOE #2 to BSI at BSI's Designated Address. *See* <u>Exhibit 8</u>.

128.     BSI received NOE #2 at BSI's Designated Address on July 29, 2021.

129.     Through NOE #2, Cox reiterated that she is the sole owner of the Home and explained to BSI that Seterus filed the Proof of Claim in the Bankruptcy Case wherein it treated Cox as the borrower of the Loan. *See* <u>Exhibit 8</u>.

130.     On or about September 10, 2021, BSI sent the NOE #2 Response apologizing for failing to substantively respond to "previous letters", but failing to acknowledge that Cox was the sole owner of the Home. *See* <u>Exhibit 9</u>.

131.     BSI did not fulfill its obligations as to 12 C.F.R. § 1024.35(e)(1)(i)(B), as it is clear that BSI did not perform a reasonable investigation into the errors alleged through NOE #2 because not only did Cox enclose with the RFIs and NOE #1 and NOE #2  evidence showing that Cox is the sole owner of the Home, Seterus, the previous servicer of the Loan, already acknowledged, through its filing in the Bankruptcy Case, that Cox had an ownership interest in the Loan. *See* <u>Exhibit 1</u>, <u>Exhibit 3</u>, <u>Exhibit 4</u>, <u>Exhibit 6</u>, and <u>Exhibit 8</u>.

132.     BSI's failure to properly respond to NOE #2 by failing to correct its errors or to otherwise perform a reasonable investigation into and otherwise properly respond to the errors alleged through NOE #2 constitutes a violation of 12 C.F.R. § 1024.35(e) and 12 U.S.C. §§ 2605(e)

and (k) and has caused Cox to suffer actual damages, including, but not limited to incurring attorneys' fees and costs associated with the preparing and sending of NOE #3 (*see* <u>Exhibit 11</u>), which would not have been necessary but for BSI's failure to properly respond to NOE #2.

133. Further, BSI's failure to comply with 12 C.F.R. § 1024.35(e) and 12 U.S.C. §§ 2605(e) and (k) caused Cox's attorneys' fees and costs associated with the preparation of NOE #2 to metamorphose into damages. *See Marais I* and *Marais II*.

134. On or about November 3, 2021, Cox, through counsel, submitted NOE #3 to BSI at BSI's Designated Address. *See* <u>Exhibit 11</u>.

135. BSI received NOE #3 at BSI's Designated Address on November 6, 2021. *See* <u>Exhibit 11</u>.

136. Through NOE #3, Cox asserted that BSI had twice failed to timely pay the premium for Cox's homeowners insurance policy through USAA and that BSI refused to speak with Cox regarding the Loan and otherwise refused to recognize her status as to the Loan. *See* <u>Exhibit 11</u>.

137. On or about November 17, 2021, BSI sent the NOE #3 Response claiming that it required evidence that Allen was deceased and that Cox was the sole heir. *See* <u>Exhibit 12</u>.

138. BSI did not fulfill its obligations as to 12 C.F.R. § 1024.35(e)(1)(i)(B), as it is clear that BSI did not perform a reasonable investigation into the errors alleged through NOE #3, because, although BSI claimed it corrected the errors asserted by NOE #3, it instead transferred the Loan to Fay without making any corrections. *See* <u>Exhibit 12</u>.

139. BSI's failure to properly respond to NOE #3 by failing to correct its errors or to otherwise perform a reasonable investigation into and otherwise properly respond to the errors alleged through NOE #3 constitutes a violation of 12 C.F.R. § 1024.35(e) and 12 U.S.C. §§ 2605(e) and (k) and has caused Cox to suffer actual damages, including, but not limited to incurring

attorneys' fees and costs associated with the preparing and sending of NOE #4 (*see* <u>Exhibit 13</u>), which would not have been necessary but for BSI's failure to timely and properly respond to NOE #3.

140.    Further, BSI's failure to comply with 12 C.F.R. § 1024.35(e) and 12 U.S.C. §§ 2605(e) and (k) caused Cox's attorneys' fees and costs associated with the preparation of NOE #3 to metamorphose into damages. *See Marais I* and *Marais II*.

141.    BSI's actions are part of a pattern and practice of behavior in conscious disregard for Cox's rights and in abdication of BSI's obligations under RESPA and Regulation X.

142.    As a result of BSI's actions, BSI is liable to Cox for statutory damages and actual damages as further described, *supra*. 12 U.S.C. § 2605(f)(1).

143.    Additionally, Cox requests reasonable attorneys' fees and costs incurred in filing and maintaining this action. 12 U.S.C. § 2605(f)(3).

**<u>COUNT FIVE: AGAINST FAY</u>**
**VIOLATIONS OF 12 C.F.R. § 1024.35 AND 12 U.S.C. § 2605**

**(Failure to perform a reasonable investigation into the errors asserted by a notice of error)**

144.    Cox restates and incorporates all of the allegations contained in paragraphs 1 through 68 in their entirety, as if fully rewritten herein.

145.    "A servicer shall comply with the requirements of this section for any written notice from the borrower that asserts an error and that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and the error the borrower believes has occurred." 12 C.F.R. § 1024.35(a); see also 12 U.S.C. § 2605(e)(1)(B).

146.    Comment 1 of the CFPB's Official Interpretations of 12 C.F.R. § 1024.35(a) provides that "[a] notice of error is submitted by a borrower if the notice of error is submitted by an agent of the borrower." Supplement I to Part 1024.

147.    A servicer must respond to a notice of error by either:

(A)    Correcting the error or errors identified by the borrower and providing the borrower with a written notification of the correction, the effective date of the correction, and contact information, including a telephone number, for further assistance; or

(B)    Conducting a reasonable investigation and providing the borrower with a written notification that includes a statement that the servicer has determined that no error occurred, a statement of the reason or reasons for this determination, a statement of the borrower's right to request documents relied upon by the servicer in reaching its determination, information regarding how the borrower can request such documents, and contact information, including a telephone number, for further assistance.

12 C.F.R. § 1024.35(e)(1)(i); *see also* 12 U.S.C. § 2605(e)(2)(B).

148.    A servicer must respond to a notice of error in compliance with 12 C.F.R. § 1024.35(e)(1):

(A)    Not later than seven days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives the notice of error for errors asserted under paragraph (b)(6) of this section.

(B)    Prior to the date of a foreclosure sale or within 30 days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives the notice of error, whichever is earlier, for errors asserted under paragraphs (b)(9) and (10) of this section.

(C)    For all other asserted errors, not later than 30 days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives the applicable notice of error.

12 C.F.R. § 1024.35(e)(3)(i); *see also* 12 U.S.C. § 2605(e)(2).

149.    "A servicer of a federally related mortgage shall not...fail to take timely action to respond to a borrower's requests to correct errors relating to allocation of payments, final balances for purposes of paying off the loan, or avoiding foreclosure, or other standard servicer's duties." 12 U.S.C. § 2605(k)(1)(C).

150.     A servicer of a federally related mortgage shall not "fail to comply with any other obligation found by the Bureau of Consumer Financial Protection, by regulation, to be appropriate to carry out the consumer protection purposes of this chapter." 12 U.S.C. § 2605(k)(1)(E).

151.     NOE #4 constitutes a notice of error as defined by 12 C.F.R. § 1024.35(a) (and constitute qualified written requests pursuant to 12 U.S.C. § 2605(e)(2)(B)) as it is a written notice from Cox that includes her name, mortgage loan account number, and property address and asserts an error that she believed to have occurred. *See* Exhibit 13.

152.     On or about December 17, 2021, Cox, through counsel, submitted NOE #4 to Fay at Fay's Designated Address. *See* Exhibit 13.

153.     Fay received NOE #4 at Fay's Designated Address on December 20, 2021. *See* Exhibit 13.

154.     Through NOE #4, Cox asserted that BSI had refused pay the 2021-2022 USAA premium as promised through the NOE #3 Response and also informs Fay of the issues Cox encountered with BSI to allow Fay to avoid continuing in the footsteps of BSI. *See* Exhibit 13.

155.     As of July 6, 2022, Fay has failed to provide Cox or her attorneys with any acknowledgment of or substantive response to NOE #4.

156.     Fay failed to fulfill its obligations as to 12 C.F.R. § 1024.35(e)(1)(i)(A) as Fay did not admit that any errors occurred as alleged in NOE #4.

157.     Fay did not fulfill its obligations as to 12 C.F.R. § 1024.35(e)(1)(i)(B), as it is clear that Fay did not perform a reasonable investigation into the errors alleged through NOE #4 since Fay has refused to respond to NOE #4.

158.     Fay's failure to timely and properly respond to NOE #4 by failing to correct its errors or to otherwise perform a reasonable investigation into and otherwise properly respond to

the errors alleged through NOE #4 constitutes a violation of 12 C.F.R. § 1024.35(e) and 12 U.S.C. §§ 2605(e) and (k) and has caused Cox to suffer actual damages, including, but not limited to incurring attorneys' fees and costs associated with the preparing and sending of NOE #5 (*see* Exhibit 15), which would not have been necessary but for Fay's failure to properly respond to NOE #4.

159.   Further, Fay's failure to comply with 12 C.F.R. § 1024.35(e) and 12 U.S.C. §§ 2605(e) and (k) caused Cox's attorneys' fees and costs associated with the preparation of NOE #4 to metamorphose into damages. *See Marais I* and *Marais II*.

160.   Fay's actions are part of a pattern and practice of behavior in conscious disregard for Cox's rights and in abdication of BSI's obligations under RESPA and Regulation X.

161.   As a result of Fay's actions, Fay is liable to Cox for statutory damages and actual damages as further described, *supra*. 12 U.S.C. § 2605(f)(1).

162.   Additionally, Cox requests reasonable attorneys' fees and costs incurred in filing and maintaining this action. 12 U.S.C. § 2605(f)(3).

## PRAYER FOR RELIEF

**WHEREFORE** Plaintiff Tiffany D. Cox respectfully requests that this Court enter an Order granting judgment against Defendant BSI Financial, Inc., as follows:

A.   Actual damages in an amount to be determined at trial for the allegations contained in Counts One through Four;

B.   Statutory damages of Two Thousand Dollars ($2,000.00) per violation of RESPA contained in Counts One through Four;

C.   Costs and reasonable attorneys' fees as to Counts One through Four; and,

D.   Such other relief which this Court may deem appropriate.

**WHEREFORE** Plaintiff Tiffany D. Cox respectfully requests that this Court enter an Order granting judgment against Defendant Fay Servicing, LLC, as follows:

A.      Actual damages in an amount to be determined at trial for the allegations contained in Count Five;

B.      Statutory damages of Two Thousand Dollars ($2,000.00) per violation of RESPA contained in Count Five;

C.      Costs and reasonable attorneys' fees as to Count Five; and,

D.      Such other relief which this Court may deem appropriate.

## JURY DEMAND

Plaintiff Tiffany D. Cox hereby respectfully demands a trial by jury on all such claims that may be so tried.

Respectfully submitted,

*/s/Brian D. Flick, Esq.*
Brian D. Flick (OH #0081605)
DANNLAW
15000 Madison Avenue
Lakewood, OH 44107
Office: (216) 373-0539
E-Facsimile: (216) 373-0536
notices@dannlaw.com
*Counsel for Plaintiff Tiffany D. Cox*